UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES ALLERSON BROUSSARD      CIVIL ACTION NO. 6:16-cv-00440

VERSUS      JUDGE DOHERTY

U.S. COMMISSIONER,      MAG. JUDGE WHITEHURST
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the Commissioner's decision be reversed and remanded
for further consideration consistent with this report and recommendation.

### ADMINISTRATIVE PROCEEDINGS

The claimant, James Allerson Broussard, fully exhausted his administrative
remedies prior to filing this action in federal court. The claimant filed an application
for disability insurance benefits ("DIB") and an application for supplemental security
income benefits ("SSI"), alleging disability beginning on January 16, 2013.[1] His

---

[1]      Rec. Doc. 13 at 108, 112.

applications were denied.[2]  The claimant requested a hearing,[3] which was held on July 16, 2014, before Administrative Law Judge Michael Wahlder.[4]  The ALJ issued a decision on September 25, 2014,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from January 16, 2013 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on January 28, 2016, that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on July 9, 1964.[7]  At the time of the ALJ's decision, he was 50 years old.  He finished the 12th grade.[8]  He  has past relevant work experience

---

[2]      Rec. Doc. 13  at 64.

[3]      Rec. Doc. 13 at 72.

[4]      The hearing transcript is found at Rec. Doc. 13 at 26.

[5]      Rec. Doc.  13 at 9.

[6]      Rec. Doc. 13  at 1.

[7]      Rec. Doc. 13 at 108.

[8]      Rec. Doc. 13 at 29.

as a certified cook in healthcare.[9] He alleges that he has been disabled since January 2013, due to diabetes, neuropathy and gout.[10]

The record shows that in February 2007, Dr. Kenneth Ritter examined Mr. Broussard, noting complaints of weakness in legs after standing too long and burning and sharp sticking pains in his legs at night "which may be some atypical form of diabetic neuropathy," episodic gout and adult onset diabetes mellitus.[11] After this onset date, he sought treatment at Iberia Comprehensive Community Health HLT from 2009 to 2011 for skin lesions, a swollen wrist, and diabetes management.[12] From August 9, 2012 until October 14, 2013, he was treated at Teche Action Clinic. In the initial visit, the clinic noted uncontrolled Type II Diabetes with no complications, Hyperlipidemia and Gouty Arthritis.[13] The patient also reported cataracts.[14] In May 2013, the diabetes was reported as uncontrolled with no complications, the cataracts were again noted, a diabetic eye exam was discussed, and the patient was found not taking medications as prescribed and reminded about

---

[9]      Rec. Doc. 13 at 29.

[10]     Rec. Doc. 13 at 29.

[11]     Rec. Doc. 13 at 220, 222.

[12]     Rec. Doc. 13 at 226 - 243.

[13]     Rec. Doc. 13 at 272.

[14]     Rec. Doc. 13 at 270.

the importance of follow-up appointments.[15]  In  October of 2013, the clinic notes reveal  Broussard  complained of severe pain in joints,  numbness in  feet and legs, and  was  diagnosed  with  diabetic  neuropathy.[16] He  was  also  referred  to  Leonard Chabert Medical Center for a diabetic eye exam.[17]

He  received  treatment  at  University  Medical  Center  in  December  of  2013, January of 2014,  and June of 2014. In December, he complained of burning and numbness  in  feet  and  blurred  vision  for  six  months.  He  was  referred  to  an opthamologist and a wound  care specialist.[18]

An eye examination  on  December 26, 2013,  noted  decreased  distant and near  vision  in  both  eyes,  nonproliferative  diabetic  retinopathy,  and  visually significant  cataracts  producing  an  inability  to  drive  an  automobile,  operate machinery, and read fine or large print.[19] The examiner further noted that Broussard can  handle and work  with  large objects, avoid objects workplace  pathways, and avoid people approaching from the side.[20]

---

[15]     Rec Doc. 13 at 257, 259.

[16]     Rec. Doc. 13 at 253.

[17]     Rec. Doc. 13 at 249, 250, 254.

[18]     Rec. Doc. 13 at 305.

[19]     Rec. Doc. 13 at 282.

[20]     Id.

In January of 2014, at a follow-up UMC visit, Broussard reported "needles and pins and burning" in feet and difficulty standing for long periods.[21] Physical Capacities Evaluations in connection with his UMC visits reported limitations: in lifting; in standing, walking and sitting during an eight-hour workday; in feeling, fingering, kneeling, balancing, seeing, and crawling.[22] The Evaluators also noted an increased risk for falls, early fatigue and recommended that he not operate heavy machinery or equipment due to blurred vision.[23]

On July of 2014, Lezette Vienne, FNP-C with Dr. Karen Curry, MD completed a medical assessment updating the December 13, 2013 assessment. They "determined that due to diabetic neuropathy and gout, the claimant could lift 20 pounds occasionally and 10 pounds frequently; stand/walk three hours in an eight-hour workday and sit four hours in an eight hour workday with some limitation noted in feeling and fingering due to numbness and limitations in kneeling, balancing, seeing, and crawling also noted. Dr. Curry further stated that the claimant would be absent

---

[21]     Rec. Doc. 13 at 287.

[22]     Rec. Doc. 13 at 309-311 and 325, 326.

[23]     Rec. Doc. 13 at 312 and 326.

from work three days a month and symptoms would often interfere with attention and concentration."[24]

On July 16, 2014, the claimant testified at a hearing before ALJ Michael M. Wahlder that he had to quit work due to his inability to stand for long periods of time.[25] He also testified that he could stand for only 15 minutes at a time and walk about 25 feet due to weakness in his legs, pain, and swelling in his joints.[26] He complained of weakness and dizziness which forces him to lie down throughout the day; and swelling in his joints which prevents him from using his fingers at times.[27] He added that he was always in pain, that he spent most of his day reading and watching television, that he needed assistance getting in and out of bed, bathing, and putting on his shoes.[28] He also stated that his vision is blurry due to diabetes and a cataract and he has to use a walker most of the time to walk around.[29] He testified that he takes Mobic for pain and an over the counter arthritis medicine; as well as,

---

[24]     Rec. Doc. 13 at 18, 325 and 326.

[25]     Rec. Doc. 13 at 29.

[26]     Rec. Doc. 13 at 31.

[27]     Rec. Doc. 13 at 36.

[28]     Rec. Doc. 13 at 32 and 33.

[29]     Rec. Doc. 13 at 34 and 35.

Allopurinol for gout, and Metformin, Glipizide and insulin by injection for his diabetes.[30]

The claimant challenges the Commissioner's finding of nondisability.

## A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[31] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[33]

---

[30] Rec. Doc 13 at 32, 33 and 34.

[31] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[32] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[33] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[34] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[35] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[36] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[37]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[34]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[35]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[36]    *Martinez v. Chater*, 64 F.3d at 174.

[37]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

both insured and disabled, regardless of indigence.[38] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[39]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[40] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[41]

---

[38]    See 42 U.S.C. § 423(a).

[39]    42 U.S.C. § 1382(a)(1) & (2).

[40]    42 U.S.C. § 1382c(a)(3)(A).

[41]    42 U.S.C. § 1382c(a)(3)(B).

## C.   Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[42]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[43]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[44] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[45]  The claimant's residual functional capacity is used at the fourth step to

---

[42]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[43]      *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[44]      20 C.F.R. § 404.1520(a)(4).

[45]      20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[46]

The claimant bears the burden of proof on the first four steps.[47]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[48]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[49]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[50]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[51]

---

[46]     20 C.F.R. § 404.1520(e).

[47]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[48]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[50]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[51]     *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

**D.    The ALJ's Findings and Conclusions**

In this case, the ALJ determined, at step one, that the claimant engaged in substantial gainful activity through January 2013, but not thereafter.[52]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: diabetes mellitus with neuropathy, diabetic retinopathy with reduced vision, cataracts, hypertension, gout and obesity.[53]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[54]  The claimant does not challenge this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[55]

---

[52]    Rec. Doc. 13 at 15.

[53]    Rec. Doc. 13 at 15.

[54]    Rec. Doc. 13 at 16.

[55]    Rec. Doc. 13 at 19.

At step five, the ALJ found that the claimant was not disabled from January 16, 2013 through September 25, 2014 (the date of the decision) because there are jobs in the national economy that he can perform.[56]  The claimant challenges this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the light exertional level except that he cannot read fine print or work with very small objects; however, he can handle and work with large objects, avoid objects in workplace pathways, and avoid people approaching from the side. He should  and avoid working around dangerous or unprotected heights.[57]

E.     **The  Allegations  of  Error**

The claimant argues that the Commissioner's ruling is erroneous for two reasons: (1) the ALJ erred as a matter of law by failing to consult a vocational expert about the effects of the Claimant's nonexertional limitations on his ability to perform a range of light work and (2) the ALJ erred by failing to appropriately address the additional nonexertional limitations included in all of the treating and examining medical opinions of record in his residual functional capacity ["RFC"] finding.

---

[56]      Rec. Doc. 13 at 20.

[57]      Rec. Doc. 13 at 17.

-13-

**(1)** **Did the ALJ Err as a Matter of Law in Failing to Consult a Vocational Expert?**

Mr. Broussard claims that the Commissioner erred by failing to consult a vocational expert about the effects of the Claimant's nonexertional limitations on his ability to perform a range of light work.

Once a claimant satisfies his burden under the first four steps of the required analysis, the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing.[58] The Commissioner may meet that burden by reference to the Medical-Vocational Guidelines of the regulations,[59] by expert vocational testimony, or by other similar evidence.[60] The Commissioner may rely exclusively on the Guidelines only if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his residual functional capacity.[61] Thus, the Guidelines may be used exclusively "only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability

---

[58]   *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[59]   The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

[60]   *Fraga v. Bowen*, 810 F.2d at 1304.

[61]   20 C.F.R. § 404.1569; *Fraga v. Bowen*, 810 F.2d at 1304.

-14-

appearing in the record."[62]  If nonexertional impairments significantly affect the claimant's residual functional capacity, the Commissioner may not rely upon the Guidelines exclusively; instead, he is permitted to look to the Guidelines for guidance but must also utilize expert vocational testimony or other similar evidence to meet his burden of proving that there are a significant number of jobs in the national economy that the claimant can perform.[63]

If the claimant has nonexertional limitations, the Commissioner should make an individualized determination of the claimant's ability to perform specific jobs in the national economy.[64]  When an ALJ determines that a claimant suffers from a nonexertional impairment that prevents performance of the claimant's past work, the Commissioner generally must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform.[65]

---

[62]     *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994); *Lawler v. Heckler*, 761 F.2d at 197.

[63]     *Fraga v. Bowen*, 810 F.2d at 1304.  See, also, *Crowley v. Apfel*, 197 F.3d at 199; *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d 123, 127-28 (5th Cir. 1983).

[64]     *Carry v. Heckler*, 750 F.2d 479, 483, n. 9 (5th Cir. 1985).

[65]     *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d at 127-28.

In this case, the ALJ relied on the Medical-Vocational Guidelines and SSR 85-15, rather than vocational expert testimony, to find that there are jobs in significant numbers in the national economy that Claimant can perform. The ALJ found that the claimant has the RFC to perform work at the light exertional level except that he cannot read fine print or work with very small objects; however, claimant can handle and work with large objects, avoid objects in workplace pathways, and avoid people approaching from the side. In addition, the ALJ stated, "[e]ven if a person's visual impairment were to eliminate jobs that involve very good vision such as working with small objects or reading small print, as long as an individual retains sufficient visual acuity to handle and work with large objects and has the visual fields to avoid ordinary hazards in the workplace, there would be a substantial number of jobs remaining across all exertional fields. In addition, environmental restrictions do not significantly impact the broad world of work. The claimant's nonexertional impairment would be of little significance in the broad world of work and would not prohibit him from performing the basic mental demands of competitive, remunerative, unskilled work, leaving the occupational base virtually intact."[66] Thus, the ALJ

---

[66]     Rec. Doc. 13 at 21.

found that the nonexertional limitations suffered by this claimant have no adverse effect on the unskilled occupational base.[67]

The Commissioner claims that the environmental limitations(avoiding machinery and unprotected heights due to risk for fall) and the visual limitations (he cannot read fine print or work with very small objects; he can, however, handle and work with large objects, avoid objects in workplace pathways, and avoid people approaching from the side) do not have a "significant effect on the light job base." Therefore, The Commissioner claims that the ALJ properly relied on the Medical-Vocational Guidelines and SSR 85-15 rather than vocational expert testimony to find that there are jobs in significant numbers in the national economy that Claimant can perform.

Claimant argues that the **combination** of the nonexertional (the environmental and visual restrictions) significantly affected the RFC of Claimant. Therefore, the Claimant contends the ALJ erred as a matter of law in failing to consult a vocational expert.

It is significant to note that at step two, the ALJ found that the claimant has the following **sever**e impairments: diabetes mellitus with neuropathy, diabetic

---

[67]     Id.

retinopathy with reduced vision, cataracts, hypertension, gout and obesity.[68] The ALJ further found that the severe diabetic impairments produced environmental <u>and</u> visual nonexertional limitations, and then relied on SSR 85-15 to conclude that the nonexertional limitations do not significantly impact the occupational base. The ALJ failed, however, to demonstrate or even suggest that SSR 85-15 addressed Plaintiff's **combined** limitations.[69] Rather, the ALJ addressed each one individually without regard for their **combined** impact. The Court finds that the combination of limitations described in the RFC, precludes the ALJ from relying on the Medical-Vocational Guidelines at step 5. Thus, the ALJ erred in failing to find that Mr. Broussard has limitations that preclude exclusive reliance on the guidelines, erred in relying solely upon the Guidelines and erred in failing to obtain testimony from a vocational expert.

**(2)** **<u>Did The ALJ Err By Failing to Appropriately Address the Nonexertional Limitations Included in All of the Treating and Examining Medical Opinions of Record in His RFC</u>**

Claimant argues that the ALJ gave significant weight to the opinion of the Agency's vision consultative examiner, but did not explain one of the most limiting aspects of that opinion - that the Claimant cannot read large print. Claimant argues

---

[68]    Rec. Doc. 13 at 15.

[69]    Rec. Doc. 13 at 20-21.

that the ALJ's failure to address this limitation one way or another violates the principle of "accept and include or reject and explain," as well as the duty to explain his findings in a way that permits meaningful judicial review. Claimant further contends that the ALJ failed to properly take into account numerous postural limitations expressed in the reports Dr. Curry and Ms. Vienne.

The Commissioner contends that there is adequate support in the record for the ALJ's decision to disregard the eye examiner's finding that Claimant could not read large print namely that physician James Murtagh, M.D., reviewed this record and opined that Claimant had no limitations with reading large print[70] and Claimant's own admission that [71] he spent at least some of his time reading. The Commissioner further contends that Claimant's limitations as described by Dr. Curry and Ms. Vienne are fully encapsulated in the ALJ's finding and that these limitations were not supported by the record evidence.[72]

The Court finds Claimant's argument lacks merit and finds ample evidence in the record to support the ALJ's decision to disregard the inability to read "large print" expressed by Agency's vision consultative examiner and the postural

---

[70]     Rec. Doc. 13 at 47, 48.

[71]     Rec. Doc. 13 at 32.

[72]      Rec. Doc. 13 at 309-312, 325-326.

limitations expressed by Dr. Curry and Ms. Vienne. Thus, no error occurred.

A reviewing court must affirm the Commissioner's determination of disability when substantial evidence of record supports the determination, but the court must not affirm a decision reached by failing to follow established legal standards.[73] When an ALJ improperly relies on the Guidelines, he has failed to follow established legal standards. Under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision may be reversed and the case may be remanded for further administrative action when the court finds that improper legal standards were applied.[74] Accordingly, the undersigned recommends that this matter be reversed and remanded for supplementation of the record with vocational expert testimony.

### CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's findings are not based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative action under sentence four of 42 U.S.C. § 405(g), specifically for the purpose of

---

[73]     *Hughes v. Shalala*, 23 F.3d 957, 959 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990); *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989).

[74]     See *Moncrief v. Gardner*, 357 F.2d 651, 653 (5th Cir. 1966).

obtaining the testimony of a vocational expert regarding whether there are jobs available in the economy that the claimant can perform.

Under the provisions of 28 U.S.C. § 636(b)(1)© and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 19th day of September, 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE